UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

1200 SIXTH STREET, LLC,

                Plaintiff,                      Case Number 11-12948
                                                Honorable David M. Lawson

      v.

UNTIED STATES OF AMERICA,
acting by and through the GENERAL
SERVICES ADMINISTRATION,

                Defendant.

_____/

## <u>OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS</u>

Justice Oliver Wendell Holmes, Jr. once wrote: "Men must turn square corners when they deal with the Government." *Rock Island, A. & L.R. Co. v. United States*, 254 U.S. 141, 143 (1920). Add to that caution the further warning that one chooses to do business with the General Services Administration at its peril, and the lesson of this case emerges. The plaintiff has brought suit to recover the considerable expenses it incurred based on a representation made by a General Services Administration (GSA) employee that the GSA intended to exercise an option to purchase the plaintiff's office building complex. As it turns out, the GSA fumbled the deal when it failed to contractually bind a developer whose participation was integral to the closing. The sale fell through, and the plaintiff — who might have had a remedy against the GSA and its employees had they been private actors — has run into the obstacle of sovereign immunity in its efforts to recover its losses. Although the plaintiff has tried to plead around that doctrine, in the end the plaintiff's theories of liability all are based on the statements by the GSA's employees that the government intend to close the deal, which proved to be a misrepresentation for which the government is immune from liability.

The Court, therefore, must grant the government's motion to dismiss for want of subject matter jurisdiction.

I.

The facts of the case come from the complaint, which are taken as true because of the procedural posture of the case. The office building complex is located at 1200 Sixth Street on the western edge of Detroit's downtown area. The eponymous plaintiff is a limited liability company whose sole business purpose is to own and operate that land, building, and adjoining parking areas. Its managing partner is Samir A. Danou.

The plaintiff purchased the land from the State of Michigan in 2005 for $6.3 million. The building was vacant at the time; however, the State reserved an easement under which two entities — the Federal Aviation Administration (FAA) and the Michigan State Police (MSP) — could continue to operate tower antenna systems that had been installed on the building, which the plaintiff was obligated to maintain. The easement was to last for five years or until the plaintiff decided to terminate it, whichever occurred first.

In the meantime, in the summer and fall of 2005, Congress authorized the GSA to lease up to 266,200 square feet and 271 parking spaces for the Federal Bureau of Investigation (FBI) for a term of 15 years. The plan was for the GSA to obtain an option on a suitable building, assign the option to a developer who would purchase and refurbish the building, and then the GSA would enter into a long-term lease of the premises for the FBI.

The plaintiff and the GSA negotiated an assignable one-year option on the 1200 Sixth Street land and building effective August 1, 2006. The purchase price was $9 million, and the GSA had the right to extend the option for one thirty-day period. The option agreement required the plaintiff

to accomplish a number of tasks at the plaintiff's expense before the real estate transaction could close.  Those tasks included delivering a topographical metes and bounds land title survey, delivering a preliminary title commitment for an owner's title insurance policy, funding any unapproved "due care" activities referenced in Michigan's hazardous substances law, Mich. Comp. Laws § 324.20107a, obtaining governmental approvals to vacate Sixth and Abbott Streets, and obtaining any zoning variances.  The option obliged the plaintiff to deliver clear title, which apparently included the obligation to eliminate the easement for the communications antennae. Several of the tasks required the parties to the option to spend substantial amounts of money, time, and effort, presumably on the hope that the deal would be finalized.  Except for reimbursement of the plaintiff for the cost of a traffic study, the option contained no provision to compensate either party for the expenses of bringing the deal together before the option actually was exercised.  To the contrary, the option explicitly stated:

> 14. Failure to Exercise Option.  If Optionee elects not to exercise the rights, option, or fee simple interests granted herein and to complete the purchase within the time and in the manner provided herein, then this Option shall terminate without further action or obligation on the part of either party.

Compl., Ex. D, Option Agreement ¶ 14.

The plaintiff's transactional attorney was Neil Silver.  The GSA's contact person in charge of the project was Julie Hoffman.  On February 16, 2007, Hoffman sent a letter to the Michigan State Housing Development Authority and Silver in which she stated, in part: "This Project will be built.  There is no speculation.  In short, this Project will be a tremendous success story demonstrating what can be accomplished when private parties and federal, state, and local government partner to revitalize our older urban areas."  Compl., Ex. L, Feb. 16, 2007 correspondence at 2.  On May 10, 2007, Hoffman e-mailed Silver and asked him to "proceed with

-3-

contacting the State regarding the 90-day notice for removal of the antennaes [sic]."  Compl., Ex. J, Notice of Tower Removal Notice.  The plaintiff complied; it cost the plaintiff $114,000 to vacate the easement and remove the tower.  The plaintiff also incurred legal fees in preparing for the closing on the property.

Higgins Development Partners, Inc. (Higgins) was the developer that initially won the bid for the FBI project in late 2006.  According to Silver, Forrest Hudson of the GSA stated that the bid specifications required the successful bidder to accept the option to purchase and close the transaction as soon as the plaintiff removed all the contingencies.  Silver says that he repeatedly requested and received assurances from Hudson and Latrice Lacey, GSA's contract procurement officer, that Higgins was "locked in" to the deal.  The plan, apparently, was to assign the option to Higgins and have Higgins complete the purchase according to the terms of the option.  However, during 2007, Higgins attempted to restructure the agreement, and the plaintiff inquired of the GSA how Higgins could do that.

In June 2007, Silver began asking for copies of Higgins's written acceptance of the assignment and its execution of the option agreement.  In response, Hoffman and Robinson told Silver for the first time that Higgins had not been contractually bound to the deal due to an "oversight" by the GSA.  They assured Silver that the deal would close even if another developer had to be found.  Higgins ultimately walked away from the project.  GSA issued a second set of bid solicitations, but no satisfactory bidder responded.

On July 21, 2010, plaintiff's counsel sent a letter to the GSA demanding reimbursement for its expenditures of approximately $4.3 million.  The plaintiff summarized the basis for its claims as follows:

-4-

> [T]he so called 'Real Estate Option Agreement' between the GSA and 1200 Sixth Street LLC . . . was represented by yourself to my client and Mr. Silver as a mere formality necessitated because the Government was involved and that, in fact, the transaction was an assured purchase whereby the Government would absolutely secure the purchase of the property. These representations were made by you at the insistence of Mr. Danou due to Mr. Danou's stated financial concerns as to why would he spend hundreds of thousands of dollars meeting 'pre-conditions' to closing if the Government could merely walk away at any time it chose. According to Mr. Danou and Mr. Silver such statements were made on a minimum of 4 or 5 occasions and in all instances you assured them that there was nothing to be concerned over as the option is merely the format of the way the Government acquires property but that notwithstanding the format if my client performed all of the preconditions at its expense the sale would consummate.

Compl., Ex. M, July 21, 2010 Letter to GSA. The plaintiff described its theories of recovery thus:

> Without providing an extended dissertation of the law relative to all the conduct above described, my client claims that because of the special trust relationship created by you and the GSA that various causes of action exist including but not limited to innocent, negligent, silent and active misrepresentation, detrimental reliance, promissory estoppel and of course, breach of contract.

*Ibid.*

The GSA acknowledged receipt of the plaintiff's claims on March 22, 2011 but rejected all of them, except for $13,814.98 for the traffic study. Despite the government's willingness to reimburse the plaintiff for the cost of the traffic study, it has not done so yet.

The plaintiff filed the present action alleging promissory estoppel and detrimental reliance (Count 1), quasi contract (Count 2), negligent misrepresentation for future facts and negligent directives (Count 3), declaratory and injunctive relief (Count 4), and attorney's fees under the EAJA (Count 5). Count 4 alleges a class claim for declaratory and injunctive relief regarding the disputes clause in the option agreement that refers to the Contract Disputes Act. The option stated that the parties agreed that disputes would be resolved under that Act, which by its own terms does not apply to procurement contracts involving real estate. *See* 41 U.S.C. § 7102(a)(1) (formerly codified as 41

-5-

U.S.C. § 602). The complaint alleges that jurisdiction exists for Counts 1 through 3 under the Federal Tort Claims Act (FTCA), and that jurisdiction exists for Count 4 under 28 U.S.C. § 1331.

The government has filed a motion to dismiss alleging that the Court does not have subject matter jurisdiction because the government has not waived its sovereign immunity for any of the plaintiff's causes of action. The Court heard oral argument on the motion on March 13, 2012.

## II.

The government's motion is based on Federal Rule of Civil Procedure 12(b)(1) and (6). Lack of subject matter jurisdiction may be asserted at any time, either in a pleading or a motion. Fed. R. Civ. P. 12(b)(1); *Television Reception Corp. v. Dunbar*, 426 F.2d 174, 177 (6th Cir. 1970). When subject matter jurisdiction is challenged, the plaintiff has the burden of proving jurisdiction in order to survive the motion. *Michigan S. R.R. Co. v. Branch & St. Joseph Cntys. Rail Users Ass'n, Inc.*, 287 F.3d 568, 573 (6th Cir. 2002); *see also Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). There are two types of challenges to subject matter jurisdiction that can be raised by a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1): facial attacks or factual attacks. *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). In a facial attack on the subject matter jurisdiction, as here, the district court accepts the parties' allegations as true, similar to the standard employed in motions under Rule 12(b)(6). *Ibid.*

It is well established that a claim against the United States is barred absent waiver of sovereign immunity, "'and the terms of [the government's] consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *United States v. Testan*, 424 U.S. 392, 399 (1976) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). A waiver of immunity cannot be

-6-

implied; it must be "unequivocally expressed in statutory text." *Lane v. Pena*, 518 U.S. 187, 192 (1996); *FDIC v. Meyer*, 510 U.S. 471, 475 (1994) (holding that federal courts have no subject matter jurisdiction to hear a claim against the United States or one of its agencies absent a clear waiver of sovereign immunity).

### A.  Counts 1 through 3

The plaintiff has invoked the FTCA as a basis for jurisdiction and waiver of sovereign immunity.  The FTCA provides a limited waiver of sovereign immunity and subjects the United States to liability for "tort claims, in the same manner and to the same extent as a private individual under like circumstances."  28 U.S.C. § 2674.  The district court has jurisdiction over "civil actions on claims against the United States, for money damages . . . for . . . loss of property . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1).  However, there is an exception.  "The provisions of [the FTCA] and section 1346(b) of this title shall not apply to . . . [a]ny claim arising out of . . . misrepresentation, deceit, or interference with contract rights."  28 U.S.C. § 2680(h).

The defendant argues that the plaintiff's claims stated in counts 1 through 3 of the complaint fall squarely within section 2680(h)'s exception and are barred by sovereign immunity because they depend on a false or incorrect statement by employees of the GSA.  The plaintiff insists that its claims are not based on any misrepresentation, but rather it acted on a directive from the GSA that was negligently made, and as a result, the plaintiff incurred its considerable expenses even though the deal would never close.

-7-

Two cases decided by the Supreme Court have defined the territory covered by section 2680(h): *United States v. Neustadt*, 366 U.S. 696 (1961) and *Block v. Neal*, 460 U.S. 289 (1983).

*Neustadt* involved a claim by a home purchaser who said he was induced to pay more than fair market value for a house based on an inaccurate Federal Housing Authority (FHA) inspection and appraisal. The 16-year-old house was inspected by FHA inspectors and an appraisal was issued based on the inspection. About a year after the closing, the Neustadts noticed cracks in the walls and ceiling, which later were discovered to be caused by substrate settling that the FHA inspector missed. They sued the federal government alleging that the FHA negligently inspected and appraised the property for mortgage insurance purposes, they were justified in relying on the inspection and appraisal, and they would not have bought the home but for the FHA's negligence. The Court held that the Neustadts' claim was barred by section 2680(h). The Court interpreted the term "misrepresentation in section 2680(h) to mean negligent misrepresentation, which . . . Congress had in mind when it placed the word 'misrepresentation' before the word 'deceit' in s[ection] 2680(h)." 366 U.S. at 706-07. The essence of the plaintiffs' claim in that case was not so much the negligent inspection, but the inaccurate communication of the home's value to the plaintiffs and their reliance on that information. Dismissing the idea that a negligent inspection was at the root of the claim, the Court quoted approvingly the instruction that "'[w]e must then look beyond the literal meaning of the language to ascertain the real cause of complaint.'" *Id.* at 703 (quoting *Hall v. United States*, 274 F.2d 69, 71 (10th Cir. 1959)). The Court then acknowledged that government agents breach a common law duty when misinformation is communicated to people who rely on it; but the government is immune from such conduct under section 2680(h). *Id.* at 710-11 (stating: "In

practically all such instances, it may be said that the Government owes a 'specific duty' to obtain and communicate information carefully, less the intended recipient be misled to his financial harm. While we do not condone carelessness by government employees in gathering and promulgating such information, neither can we justifiably ignore the plain words Congress has used in limiting the scope of the Government's tort liability."). The Court held that sovereign immunity barred the claim against the government.

*Block v. Neal* also involved a disgruntled home purchaser, but the Court distinguished *Neustadt* based on the plaintiffs' cause of action. In that case, Neal obtained a loan from the Farmers Home Administration (FmHA) for the construction of a pre-fabricated house. Neal's agreement with the building contractor required the building to conform to the FmHA's approved plans, and it gave the FmHA the right to inspect and test materials and workmanship and reject defective work. An FmHA official inspected the house three times during different phases of construction, and her reports did not note any discrepancies. After the final inspection, the FmHA official issued a signed report that the house conformed with the FmHA's approved specifications; but after Neal moved in, she discovered a number of defects with the house, some of which involved deviations from the FmHA-approved plans. When the FmHA refused Neal's request to pay for repairs, she sued for breach of contract, negligence in performing the inspections and supervising construction, and "detrimental reliance." The district court dismissed the complaint on the grounds that the FmHA had no contractual or statutory duty to supervise construction because the inspection regulations were intended to benefit only the government's security interest in the dwelling, and Neal failed to state a tort claim under Tennessee law. The Sixth Circuit agreed that no contractual duty existed but reversed because Neal had stated a claim for negligent performance of a voluntary

undertaking.  The Supreme Court granted certiorari to determine whether Neal's claim was barred by section 2680(h) because it arose out of misrepresentation.

The Court affirmed the Sixth Circuit's decision and distinguished *Neustadt*.  The Court characterized the claim in *Neustadt* as one of misrepresentation because the plaintiff there alleged that they were "misled by a 'Statement of FHA Appraisal' prepared by the Government." *Block*, 460 U.S. at 296.  As the Court saw it, "Neustadt alleged no injury that he would have suffered independently of his reliance on the erroneous appraisal." *Ibid.*  Without that misrepresentation, presumably Neustadt would not have purchased the house for the price he paid.  Therefore, "[b]ecause the alleged conduct that was the basis of his negligence claim was in essence a negligent misrepresentation, [his] action was barred under the 'misrepresentation' exception." *Id.* at 296-97. In contrast, the Court found that the core of Neal's claim was not a representation of the house's condition, but the faulty inspections performed by the government inspector.  Although there was no statutory duty that ran from the inspector to the home buyer, the Court credited the lower court's finding that "to prevail under the [state common law] Good Samaritan doctrine, Neal must show that FmHA officials voluntarily undertook to supervise construction of her house; that the officials failed to use due care in carrying out their supervisory activity; and that she suffered some pecuniary injury proximately caused by FmHA's failure to use due care." *Ibid.*  Because the claim did not rely on government misstatements, the Court reasoned, the misrepresentation exception to the sovereign immunity waiver in section 2680(h) did not preclude the action.  The Supreme Court explained: "Neither the language nor history of the [Federal Tort Claims] Act suggest that when one aspect of the Government's conduct is not actionable under the 'misrepresentation' exception, a claimant is

-10-

barred from pursuing a distinct claim arising out of other aspects of the Government's conduct." *Id.* at 298.

Following *Neustadt* and *Neal*, circuit courts have held that section 2680(h) bars any claim in which the government's misstatements, either negligently or intentionally made, were "essential" to the plaintiff's claims. *See JBP Acquisitions, LP v. United States ex rel. FDIC*, 224 F.3d 1260, 1264 (11th Cir. 2000) ("The test in applying the misrepresentation exception is whether the essence of the claim involves the government's failure to use due care in obtaining and communicating information."); *Dorking Genetics v. United States*, 76 F.3d 1261, 1264-65 (2d Cir. 1996) ("In determining the applicability of the § 2680(h) exception, a court must look, not to the theory upon which the plaintiff elects to proceed, but rather to the substance of the claim which he asserts. . . . Recovery is not barred . . . if the plaintiff alleges the breach of a cognizable duty owed to him which is distinct from any duty to use due care in communicating information." (internal quotations and citations omitted)); *Mt. Homes, Inc. v. United States*, 912 F.2d 352, 355 (9th Cir. 1990) (holding that plaintiff's claim for failure to communicate correct sales tax information was in essence one for negligent misrepresentation); *JM Mech. Corp. v. United States by U.S. Dep't of Housing and Urban Dev.*, 716 F.2d 190 (3d Cir. 1983); *Gaudet v. United States*, 517 F.2d 1034, 1035 (5th Cir. 1975) ("It is the substance of the claim and not the language used in stating it which controls."). The parties do not dispute this general statement of the law. The disagree vigorously, however, in its application.

Count Three of the plaintiff's complaint is a claim for "negligent misrepresentation for future facts and negligent directives." Compl. at 20. The complaint alleges that "the Defendant . . . issued communications and directives to the Plaintiff which were negligent in that they were intended to

induce the Plaintiff to take action based upon the representation of future conduct that the transaction would be closing . . . and Plaintiff justifiably relied on those representations of the Defendant." Compl. ¶¶ 98-99.

The defendant argues that Count Three should be dismissed because the substance of Count Three is indistinguishable from *Neustadt*. Citing *Frigard v. United States*, 862 F.2d 201 (9th Cir. 1988); *Boda v. United States*, 698 F.2d 1174 (11th Cir. 1983); *Redmond v. United States*, 518 F.2d 811 (7th Cir. 1975); *Jones v. United States*, 207 F.2d 563 (2d Cir. 1953); and *United States v. Sheehan Props., Inc.*, 285 F. Supp. 608 (D. Minn. 1968), the defendant argues that courts have consistently held that the misrepresentation exception bars suits by disappointed investors seeking to hold the United States liable for monetary loses resulting from reliance on government misinformation or the government's failure to provide correct information. The plaintiff attempts to save its claim by (1) characterizing it as a claim for detrimental reliance on the GSA's negligent directive, which "was the collateral result of the GSA's negligent performance of an operational task," Resp. at 2;  (2) citing Michigan cases that hold that a misrepresentation claim must be based only on a statement of existing fact; and (3) citing a number of federal cases that purportedly support the proposition that the misrepresentation exception does not apply to a negligent directive resulting from negligent performance of an assumed task, including *United States v. Fowler*, 913 F.2d 1382 (9th Cir. 1990); *Cross Bros. Meat Packers, Inc. v. United States*, 705 F.2d 682 (3d Cir. 1983); *Guild v. United States*, 685 F.2d 324 (9th Cir. 1982); *Carter v. United States*, 725 F. Supp. 2d 346 (E.D.N.Y. 2010); and *Moyer Packing Co. v. United States*, 567 F. Supp. 2d 737 (E.D. Pa. 2008).

The plaintiff correctly states that courts have recognized that the misrepresentation exception does not bar suits for negligent performance of an operational task. *See Metro. Life Ins. Co. v.*

*Atkins*, 225 F.3d 510, 513 (5th Cir. 2000) (holding that claim that federal personnel clerk negligently failed to secure and retain signed copy of FEGLIA Designation of Beneficiary form was not barred by misrepresentation exception); *Guild*, 685 F.2d at 325-26 (holding that misrepresentation exception did not apply to claim against government for negligently designing dam because designing the dam was an operational task and any misrepresentation was collateral). However, the plaintiff's characterization of its claim is unconvincing for a few reasons. First, the plaintiff refers repeatedly to an operational task but fails to clearly identify that task. Perhaps it was the obligation to contractually bind a developer to purchase the Property. Or maybe it was the directive for the plaintiff to remove the antenna tower. Either way, those allegations must be viewed in context. It is not plausible for the plaintiff to say it incurred expenses, for example, by following the instructions to remove the tower in the absence of an understanding that the government intended the deal to close. And that understanding could only have come from the government's false statements that the developer was "locked in" and that the land sale would be consummated. Could the plaintiff credibly allege that it would have incurred its considerable expenses absent such an understanding? Without the context of the GSA employees' false assurances, the plaintiff's claim makes no sense.

Second, the plaintiff fails to allege that the contract created a duty on the government's part to secure a developer. In fact, the option agreement provides that the government's failure to exercise the option terminates the agreement without further obligation to either party.

Third, the court must "'look beyond the literal meaning of the language to ascertain the real cause of complaint.'" *Neustadt*, 366 U.S. at 703 (quoting *Hall*, 274 F.2d at 71). To determine whether the plaintiff's claim is barred, the court must consider "whether the focal point of the claim

is negligence in the communication of (or failure to communicate) information or negligence in the performance of an operational task, with misrepresentation being merely collateral to such performance." *Life Partners Inc. v. United States*, 650 F.3d 1026, 1032 (5th Cir. 2011) (internal quotations omitted). Drilling into the claim itself, it is apparent that the plaintiff's damages flow not from the GSA's failure to "lock up" the developer, but from the plaintiff's decision to incur closing expenses based on the understanding that the path to closing was clear. It is true that the GSA's statement that the deal "will" close misrepresents a future fact. But that is no less a "misrepresentation" within the meaning of section 2680(h).

The Court, therefore, must conclude that the government's false statement is essential to the plaintiff's claim. Plaintiff's July 21, 2010 letter further supports that conclusion. The plaintiff cannot escape section 2680(h)'s bar by artful pleading.

Count 1 of the complaint more obviously is based on the GSA's misrepresentations. It alleges a claim for promissory estoppel and detrimental reliance. It is worth noting in passing that "Michigan does not recognize an independent cause of action for detrimental reliance." *Erickson's Flooring & Supply Co. v. Tembec, Inc.*, 212 F. App'x 558, 562 (6th Cir. Jan. 9, 2007); *Aero Taxi-Rockford v. General Motors Corp.*, No. 259565, 2006 WL 1479915, at *9 (Mich. Ct. App. May 30, 2006). "Rather, detrimental reliance is an element of other causes of action, for example, promissory estoppel and innocent misrepresentation." *Aero Taxi-Rockford*, 2006 WL 1479915, at *9.

Michigan courts recognize that promissory estoppel is a cause of action. *Novak v. Nationwide Mut. Ins. Co.*, 235 Mich. App. 675, 686, 599 N.W.2d 546, 552 (1999) ("[P]romissory estoppel is a distinct cause of action."). The plaintiff has acknowledged, however, that the claims

-14-

pleaded in Counts One through Three merely are alternative theories on which the action is to proceed.

The essence of a promissory estoppel claim is "a promise" that eventually is unfulfilled. *See State Bank of Standish v. Curry*, 442 Mich. 76, 83, 500 N.W.2d 104, 107 (1993) (quoting 1 Restatement Contracts, 2d, § 90, p. 242). "A promise is a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made." *Id.* at 85, 500 N.W.2d at 108 (quoting 1 Restatement Contracts, 2d, § 2, p. 8). Michigan courts have characterized a claim for promissory estoppel as both one "akin to a contract claim" and as a tort. *See Byrne v. Republic Bank*, No. 268762, 2007 WL 2560467, at *4 n.2 (Mich. Ct. App. Sept. 6, 2007).   But the way the plaintiff describes the "promise" in this case, it can be viewed as nothing other that a misrepresentation of facts, both existing and in the future.

Count 1 relies on Hoffman's directive to remove the antennae and Hoffman's public statements that there was no question the project would be completed.  The complaint alleges that "[t]he Plaintiff in reliance upon all the communications leading up to the demand to remove the tower, gave notice to the [Michigan State Police] to effectuate the removal and then set upon a course involving itself and its attorneys in preparation for closing with expenses and the incurrence of costs in excess [of] anything agreed to or contemplated under the ultimately non-exercised Option," Compl. ¶ 79, and that "[t]he actions of the GSA in directing Plaintiff to remove the tower and to take further actions to close in light of its failure, amongst other things, to secure a commitment from its selected Developer was negligent and wrongful, as the natural reaction of the Plaintiff to the request of the Defendant would be to follow the Defendant's instructions and directives," *id.* ¶ 81.   These are claims of detrimental reliance on what turned out to be a

-15-

misrepresentation.  The plaintiff argues that the Court has jurisdiction over Count 1 under the FTCA and that Counts 1 through 3 are all different theories of relief for the same conduct — the government's negligent collection and dissemination of information that it knew the plaintiff would rely on.

The plaintiff also advances the theory of equitable estoppel.  However, that equitable doctrine was never thought to provide affirmative relief.  *Dobrowski v. Jay Dee Contractors, Inc.*, 571 F.3d 551, 554 n.1 (6th Cir. 2009) ("[E]quitable estoppel is not a cause of action but a judicial doctrine that bars the assertion of a claim or defense.").  Moreover, it is doubtful that equitable estoppel was ever intended to apply to the government.  *Office of Personnel Mgmt v. Richmond*, 496 U.S. 414, 419-23 (1990).  And the Sixth Circuit has observed that "[w]hile the Supreme Court refused to adopt a flat rule that estoppel may never lie against the government, they noted that they have reversed every finding of estoppel that they have reviewed.  The Court further noted that they have never upheld an estoppel claim against the government for the payment of money."  *United States v. Guy*, 978 F.2d 934, 937 n.3 (6th Cir. 1992).  The Supreme Court has not found estoppel claims as an effective means of avoiding the exception in section 3680(h).  *Richmond*, 496 U.S. 429-30 ("The claim brought by respondent is in practical effect one for misrepresentation, despite the application of the 'estoppel' label.  We would be most hesitant to create a judicial doctrine of estoppel that would nullify a congressional decision against authorization of the same class of claims.").

The plaintiff has not stated a claim in counts 1 or 3 of the complaint that fall within the government's waiver of immunity in the FTCA.  Therefore, the Court has no subject matter jurisdiction to hear them.

Count 2 of the complaint alleges that "the acts and activities of the Defendant through its authorized representatives created a quasi contract as a matter of law to compel the Government to purchase the Property and close[ ] on it or pay the Plaintiff's loss of the benefit of its bargain including holding costs and building rehabilitation expenses."  Compl. ¶ 93.  The Court does not have jurisdiction over that claim, either.

For claims against the United States, the Court's jurisdiction is "concurrent with the United States Court of Federal Claims, [over a]ny other civil action or claim . . . not exceeding $10,000 in amount, founded . . . upon any express or implied contract with the United States . . . except that the district courts shall not have jurisdiction of any civil action or claim against the United States founded upon any express or implied contract with the United States or for liquidated or unliquidated damages in cases not sounding in tort which are subject to [the Contract Disputes Act (which is not applicable to contracts for real property)]."  28 U.S.C. § 1346(a)(2).  Claims for more than $10,000 must be brought before the United States Court of Federal Claims.  28 U.S.C. § 1491(a)(1); *see United States v. Hohri*, 482 U.S. 64, 67 n.1 (1987).

### Counts 4 and 5

Count 4 seeks an injunction prohibiting the government "from enforcing any dispute provision in a contract involving the GSA which compels the parties to resolve their disputes arising or relating to the acquisition of real estate under the Contract Disputes Act" and an order relieving and reimbursing anyone compelled to resolve their dispute with the GSA under the Contract Disputes Act.  Compl. ¶ 128.

The plaintiff alleges that the Court has jurisdiction of this claim under 28 U.S.C. § 1331.  However, the plaintiff has failed to allege a waiver of sovereign immunity the vests this Court with

-17-

jurisdiction. *Munaco v. United States*, 522 F.3d 651, 653 n.3 (6th Cir. 2008) ("[J]urisdictional statutes, such as the statute giving federal district courts original jurisdiction of civil actions arising under Constitution, laws, or treaties of United States, do not operate as waivers of sovereign immunity."); *Heydon v. MediaOne of Se. Mich., Inc.*, 327 F.3d 466, 470 (6th Cir. 2003) ("The Declaratory Judgment Act does not create an independent basis for federal subject matter jurisdiction.  The Act only provides courts with discretion to fashion a remedy.  Thus, before invoking the Act, the court must have jurisdiction already." (internal citations omitted)).

The plaintiff cites *Ex parte Young*, 209 U.S. 123 (1908) and *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952), for the idea that a court may enjoin a government official from violating the constitution or federal law.  *Young* stands for the proposition that "a federal court can issue prospective injunctive and declaratory relief compelling a *state* official to comply with federal law."  *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008) (emphasis added) (explaining that under the *Young* exception to state sovereign immunity, a federal court may enjoin a state official from interfering with federal rights); *see also Whitfield v. Tennessee*, 639 F.3d 253, 257 ("An *Ex parte Young* action may be commenced only against a state official acting in her official capacity and may 'seek [only] prospective relief to end a continuing violation of federal law.'" (quoting *Carten v. Kent State Univ.*, 282 F.3d 391, 395 (6th Cir. 2002))).  *Young* does not support the plaintiff's argument because the plaintiff has sued the federal government, not an official of a state government.

In *Youngstown Sheet & Tube Co. v. Sawyer*, the Supreme Court was "asked to decide whether the President was acting within his constitutional power when he issued an order directing the Secretary of Commerce to take possession of and operate most of the Nation's steel mills."

-18-

*Youngstown*, 343 U.S. at 582.  Under the authority of an executive order, the Secretary of Commerce took possession of the nation's steel mills and directed the presidents of the mills to serve as operating managers for the United States.  *Id.* at 583.  The companies brought suit against the Secretary of Commerce, and the district court granted a preliminary injunction enjoining enforcement of the seizure order.  The Supreme Court affirmed.  *Youngstown* does not discuss the waiver of sovereign immunity.  Instead, *Youngstown*, like *Young*, stands for the proposition that *government officials* may be enjoined from violating federal law and the Constitution.  *Youngstown* and *Young* are not helpful to the plaintiff because it is not suing a government official.

The plaintiff bears the burden of establishing the waiver of sovereign immunity and the court's subject matter jurisdiction.  *See Westfield v. Federal Republic of Germany*, 633 F.3d 409, 413 (6th Cir. 2011); *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 324 (6th Cir. 1990); *see also Levin v. United States*, 663 F.3d 1059, 1063 (9th Cir. 2011) (noting that "plaintiff bears the burden of pointing to . . . an unequivocal waiver of immunity" (internal quotation marks omitted)); *Spotts v. United States*, 613 F.3d 559, 568 (5th Cir. 2010).  The plaintiff has failed to meet its burden; therefore, Count 4 must be dismissed.

Count Five alleges that the plaintiff is entitled to attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412, if the plaintiff prevails on any of its non-tort claims.  Under the EAJA, the Court must "award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action (other than cases sounding in tort) . . . brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust."  28 U.S.C. § 2412(d)(1)(A).

-19-

The plaintiff cannot prevail on any of its claim because the Court has dismissed all of them. Therefore, Count 5 must be dismissed as well.

### III.

The result in this case will be deeply unsatisfying to the plaintiff.  It was observed in *Neustadt* that courts "do not condone carelessness by government employees in gathering and promulgating . . . information," *Neustadt*, 366 U.S. at 710, but it is difficult to view the outcome of this case as anything but condonation.  The Court is powerless to mete out justice when the claims, as here, are based on the GSA's misrepresentation, regardless of whether the misstatements were based on incompetence or mendacity.  On the other hand, citizens dealing with the government are charged with knowledge of the limits imposed on governmental employees' authority and the narrow scope of their accountability.  A contractor is well advised not to rely on promises that an agency makes unless they are in the form of an enforceable contract.  Anything less will leave plaintiffs holding the bag, possibly at great expense to themselves.

The United States has not waived immunity for the claims brought by the plaintiff in this case.  This Court has no subject matter jurisdiction to adjudicate them.  Perhaps the plaintiff might find relief in another forum; the dismissal here is not final.  *See Michigan Surgery Inv., LLC v. Arman*, 627 F.3d 572, 576-77 (6th Cir. 2010) (observing that "[d]ismissals of actions that do not reach the merits of a claim, such as dismissals for lack of jurisdiction, ordinarily are without prejudice" (quoting *Mitan v. Int'l Fid. Ins. Co.*, 23 F. App'x 292, 298 (6th Cir. 2001))).

Accordingly, it is **ORDERED** that the defendant's motion to dismiss [dkt. #9] is **GRANTED**.

-20-

It is further **ORDERED** that the complaint is **DISMISSED without prejudice**.


s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  March 15, 2012

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served
upon each attorney or party of record herein by electronic means or first
class U.S. mail on March 15, 2012.

s/Deborah R. Tofil
DEBORAH R. TOFIL